## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MALIBU CONSULTING CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Civil Action No.  SA-06-CA-735-XR** |
| | ) | |
| **FUNAIR CORPORATION, A/K/A** | ) | |
| **FUNAIR CORPORATION,** | ) | |
| | ) | |
| **Defendant and Third-Party Plaintiff** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **AVICOR AVIATION, INC. AND J. ALLAN** | ) | |
| **TAMM, INDIVIDUALLY** | ) | |
| | ) | |
| **Third-Party Defendants.** | | |

## ORDER

Third-Party Defendants filed a Motion to Dismiss for lack of personal jurisdiction (Docket No. 45). They allege the Third-Party Plaintiff has failed to meet its burden of alleging facts that meet both Texas and federal law requirements for extending jurisdiction over Avicor Aviation, Inc. and J. Allan Tamm, a director of the company. Having reviewed the briefings and applicable case law, the Court finds the Motion should be and hereby is DENIED.

### Factual Analysis

The suit arises from a dispute concerning the purchase, sell, and maintenance of a 727 airplane that Plaintiff Malibu Consulting Corporation purchased from Defendant and Third-Party Plaintiff Funair Corporation. Malibu alleges Funair prevented Aero Sky, a Texas-based corporation hired by Malibu to perform a pre-purchase inspection of the airplane, from conducting a full and thorough inspection of the plane, specifically alleging Funair adamantly refused to permit certain

plane panels to be removed despite Aero Sky's insistence that without their removal, the inspection would be hampered. Malibu further pleads that Funair misrepresented the condition of the plane and failed to inform it of the plane's full operational history, including that the plane had been struck at least once by lightning.

After completing the purchase of the 727, Malibu hired Aero Sky to perform maintenance and repairs, which based on the pre-purchase inspection reports, Malibu anticipated would cost approximately $1 million. To its dismay, the extent of corrosion and damage to the plane was considerably more than anticipated, substantially escalating the costs of the necessary repairs. Malibu contends Funair's actions and representations pre-sale were tortious and avers claims against Funair for fraudulent misrepresentation, fraudulent concealment, fraudulent non-disclosure, and negligent misrepresentation, amongst other things.

In response, Funair denies Malibu's claims and argues that to the extent it is found liable, some or all of the blame should be apportioned to Avicor Aviation, Inc. or J. Allan Tamm, its director. Malibu hired Avicor to assist in identifying a plane to purchase, arranging for a pre-purchase inspection, negotiating the airplane purchase agreement, and coordinating maintenance and repairs post-purchase. Mr. Tamm was Avicor's principal contact with Malibu during this process. Funair argues that Third-Party Defendants Avicor and Tamm intentionally, recklessly, or negligently misrepresented the condition of the aircraft to Malibu in an effort to induce Malibu to purchase the aircraft. In particular, Funair contends it was Mr. Tamm, not Funair, that issued the order restricting Aero Sky's ability to conduct a thorough pre-purchase inspection of the aircraft that Malibu ultimately purchased.

**Legal Analysis**

Avicor has its principal place of business in Oregon, and Mr. Tamm is domiciled in Washington. Both allege they do not have sufficient contacts with Texas, the forum state, for this Court to extend personal jurisdiction over them.

As an initial matter, "when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[1] In so doing, the court must resolve relevant factual disputes in the plaintiff's favor, and the plaintiff "need only plead a prima facie case for personal jurisdiction."[2]

Furthermore, "a federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law. The state court or federal court sitting in diversity may assert jurisdiction if: 1) the state's long-arm statute applies, as interpreted by the state's courts; and 2) if due process is satisfied under the fourteenth amendment to the United States Constitution."[3]

In Texas, however, the state long-arm statute provides a court with "personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution."[4] Accordingly, "the usual two-step analysis reduces to one step, and we consider whether exercising jurisdiction

---

[1] Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).

[2] Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005).

[3] *Allred*, 117 F.3d at 281.

[4] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000).

over either [Avicor] or [Tamm] is consistent with the Due Process Clause of the Fourteenth Amendment."[5]

As the Fifth Circuit has said, "the Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when 1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and 2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"[6] The court went on to state that "minimum contacts . . . can be established through contacts that give rise to specific personal jurisdiction or those that give rise to general personal jurisdiction."[7]

General jurisdiction will "attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'"[8] As the holding in the Supreme Court case of *Helicopteros Nacionales de Colombia, S.A. v. Hall*[9] and its lower court progeny demonstrate, to qualify for general jurisdiction, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there."[10] The facts presented here as to Avicor's and Tamm's contacts with Texas do not rise to

---

[5] *Id*.

[6] Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir. 1999).

[7] *Id*.

[8] *Alpine View*, 205 F.3d at 215.

[9] 466 US 408 (1984).

[10] 4 Fed. Prac. & Proc. Civ.3d § 1067.5.

such a level, meaning that if there is personal jurisdiction, it must be specific personal jurisdiction.

In "deciding whether [specific] personal jurisdiction is consistent with the Due Process Clause," the Court considers "1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; [and] 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[11] If a plaintiff makes a prima facie showing of facts that meets these two requirements, then the "burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."[12]

<u>Minimum Contacts</u>

"A defendant establishes minimum contacts with a state if the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there."[13] The defendant must engage in some act whereby it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws . . . Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."[14]

Funair asserts that Avicor and Tamm assisted Malibu in deciding to have Aero Sky do the

---

[11] Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002).

[12] *Id*. at 378, 382.

[13] *Id*. at 379.

[14] *Id*.

pre-purchase inspection, fully knowing that by choosing Aero Sky, the inspection would take place in Texas.[15] Funair further asserts that Malibu delegated almost all responsibilities for coordinating the scope of the Texas inspection to Avicor and Tamm, relying on them to ensure that the inspection in San Antonio was properly conducted.[16] In his affidavit, Tamm admits to exchanging "a number of telephone conversations and emails with Aero Sky concerning the pre-buy inspection and cost estimates for necessary maintenance."[17]

Funair relies on deposition testimony for its position that Avicor and Tamm were in charge of the scope of the pre-purchase inspection in Texas and that it was Tamm who decided to limit the inspection by not allowing Aero Sky to go under the skin of the aircraft.[18] While disputed, the Court must, in ruling on this motion, resolve factual disputes in Funair's favor.[19]

Funair asserts that Avicor's and Tamm's purposeful contacts with Texas continued after the sale of the airplane to Malibu. Avicor and Tamm challenge, however, the relevancy of these contacts for the Court's specific jurisdiction analysis, arguing that the only facts relevant to the claims pled against them are those concerning their conduct pre-purchase.

The Court finds it unnecessary to resolve this dispute because Funair has met its prima facie burden of establishing minimum contacts based solely on Avicor's and Tamm's pre-purchase contacts.  Based on the facts presented by Funair, Avicor and Tamm cannot assert that

---

[15] Docket No. 80 at 11-2.

[16] *Id*. at 12.

[17] Funair's Exhibit C at ¶ 13.

[18] Docket No. 80 at 13.

[19] *Fielding*, 415 F.3d at 424.

their contact with Texas was merely "fortuitous, random, or attenuated."[20] Multiple companies were considered by Avicor and Tamm to conduct the pre-purchase inspection. With Avicor's and Tamm's assistance, Malibu selected Aero Sky, a Texas company, with full understanding that the inspection would take place in Texas. From there, Avicor and Tamm engaged in extensive communications with Aero Sky about the parameters of the inspection, even going so far as to purportedly constrict the scope so that the panels of the aircraft could not be removed for a more thorough examination. Finally, once the inspection was completed, Avicor and Tamm communicated with Aero Sky about the results, helping translate the inspection reports for Malibu's benefit to help the latter decide whether or not to purchase the plane being held for it in Texas.[21]

Avicor and Tamm argue that Funair is relying on a direct-a-tort jurisdictional theory and that such a theory has been rejected by the Texas Supreme Court. Funair responds that 1) Texas Supreme Court law is irrelevant to the extent it conflicts with federal law, and moreover, 2) it is not asserting jurisdiction via a direct-a-tort theory. Under the direct-a-tort theory, the focus is on whether the defendant knew that the brunt of the injury would be felt by a party in the forum state. The focus here, Funair asserts, is not whether the Third-Party Defendants knew where the injury would be felt but whether they purposefully availed themselves of the privileges of doing business in the state of Texas.

The Court agrees with Funair, obviating a need to explore the extent to which Texas

---

[20] *Nuovo Pignone*, 310 F.3d at 379.

[21] The owner of Malibu stated in his deposition that "I was relying on Allan [Tamm] to interpret, you know, whatever Aero Sky was saying and - - and explain it to me in lay terms so I could make an informed judgment as to what to do." Funair's Exhibit D at 71.

Supreme Court case law on the direct-a-tort theory does or does not comport with the Fifth Circuit's personal jurisdiction jurisprudence.[22] Because the Court finds Avicor and Tamm purposefully availed themselves of the privileges of doing business in Texas, the minimum contacts test has been met.

<u>Relationship of Cause of Action to Third-Party Defendants' Forum-Related Contacts</u>

The Court has found that Avicor and Tamm purposefully directed their activities toward Texas in negotiating to have the pre-purchase inspection take place there and in directing and supervising the scope of that investigation once the plane arrived in San Antonio. The next inquiry is whether Funair's claims arise out of Avicor's and Tamm's contacts with Texas.[23]

Funair seeks to hold Avicor and Tamm responsible for any award of damages found against it. The subject of the underlying dispute between Malibu and Funair is whether Funair misled or concealed information from Malibu pre-purchase concerning the condition of the airplane. Funair denies Malibu's accusations and asserts that if Malibu was either misled or misinformed, the fault lies with Avicor and Tamm, the parties responsible for both arranging the pre-purchase inspection and purportedly choosing to limit the scope of the inspection against the recommendation of Aero Sky.

In sum, central to Funair's claims are the contacts Avicor and Tamm made with a Texas-based corporation surrounding the pre-inspection of the aircraft by that corporation in Texas. The

---

[22] As the Fifth Circuit stated in *Grantham v. Avondale Industries*, favorably citing a Third Circuit case, "the federal district court takes as its authority on federal constitutional issues decisions of the United States courts of appeals and the United States Supreme Court, rather than those of the state supreme court." 964 F.2d 471, 473 (5th Cir. 1992).

[23] *Nuovo Pignone*, 310 F.3d at 381-2.

Court finds, therefore, that Funair's "cause of action arises out of or results from [Avicor's and Tamm's] forum-related contacts."[24]

<u>Consideration of Whether the Exercise of Jurisdiction Is Unfair and Unreasonable</u>

The burden of proof now shifts to Avicor and Tamm to show that the "assertion of jurisdiction is unfair and unreasonable."[25] To do so, they "must make a compelling case."[26] In making this determination, courts look to "1) the burden on the nonresident defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental social policies."[27]

Starting with the burden on the Third-Party Defendants, Avicor is an Oregon-based company, and Tamm has his residence in Washington. Undoubtedly, the cost and inconvenience of trying a case in Texas versus the Pacific Northwest will be higher for both parties. They will have to travel to the forum state for hearings and trial, which will inconvenience them more than if the case were heard in their home states.

As for the forum state's interests, the aircraft was parked in San Antonio, Texas during much of the relevant time period. The inspection of the aircraft took place in Texas by a Texas-based company, who according to Funair, conducted a limited inspection because of the instructions given them by Tamm. Finally, the post-purchase repairs were also performed in

---

[24] *Id*. at 378.

[25] *Id*. at 382.

[26] *Id*.

[27] *Id*.

Texas, a process in which Funair alleges Avicor and Tamm were closely involved, and through which, Malibu came to the conclusion that it had been misled about the condition of the plane.

The next consideration is Funair's interest in obtaining relief. Funair has a clear interest in resolving all issues arising from Malibu's suit in one case, in one forum. If the third-party claim is not tried here, only part of the total litigation can be conducted in this forum, potentially requiring Funair to litigate the remaining issues in another forum after the claims in this case have been decided.

The interstate judicial system's interest in the most efficient resolution of controversies heavily weighs in favor of exercising jurisdiction. If jurisdiction is not exercised here, much of the underlying controversy between Malibu and Funair, which involves the same actors and principal facts as the controversy between Funair and Avicor and Tamm, will have to be re-litigated in a different forum. Such repetition is inefficient and disserves the interstate judicial system's interests.

Finally, there is no evidence to suggest that the shared interests of the states in furthering fundamental social policies is hampered by this Court's assertion of jurisdiction over Avicor and Tamm.

Fiduciary Shield Doctrine

The final step of the analysis concerning whether jurisdiction is unfair and unreasonable is to determine whether the fiduciary shield doctrine protects Tamm, whose contacts with the forum state seem to have been made solely in connection with his work on behalf of Avicor.

The fiduciary shield doctrine states that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual

though the state has in personam jurisdiction over the corporation."[28] It appears there is a split between Texas state courts and some Texas federal courts over whether the fiduciary shield doctrine should apply in a case such as this one.

Funair points to the language in *Lewis v. Indian Springs Land Corp.* that "the Texas Supreme Court has never specifically recognized the fiduciary shield doctrine."[29] Furthermore, the "Texas Courts of Appeals have applied the [fiduciary shield] doctrine only on questions of whether **general jurisdiction** existed over nonresidents."[30] Finally, "corporate officers are not shielded from the exercise of specific jurisdiction for fraudulent or **tortious** acts for which they may be liable."[31]

On the other hand, Third-Party Defendants cite to a series of recent Northern District of Texas cases applying the fiduciary shield doctrine in a way that would seem to protect Tamm from jurisdiction in this case.[32]

Admittedly, it is a close call whether the fiduciary shield should apply in a case where an individual, whose relevant contacts with the forum state were made entirely in a representative capacity, is claimed to have committed tortious acts. The Supreme Court has not squarely addressed this issue, and there is language from the Fifth Circuit Court of Appeals, Texas federal

---

[28] Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).

[29] 175 S.W.3d 906, 917 (Tex. App. 2005).

[30] *Id*. (emphasis added).

[31] *Id*. (emphasis added).

[32] *See* Dynamo v. Warehouse of Vending & Games, 168 F. Supp. 2d 616, 620 (N.D. Tex. 2001); Rogue v. Bank One, N.A., 2002 WL 31875609, at 3 (N.D. Tex. 2002); Admiral Ins. Co. v. Briggs, 2002 WL 1461911, 5-7 (N.D. Tex. 2002).

district courts, and Texas state courts that could be cited to support either the exercise or preclusion of jurisdiction.

Applying the logic and language of the Fifth Circuit in *General Retail Services, Inc. v. Wireless Toyz*, however, this Court finds the fiduciary shield doctrine does not bar jurisdiction because Tamm is "being sued for specific acts [connected with Texas], which had reasonably foreseeable consequences within Texas."[33] In other words, Funair is alleging Tamm's direction and oversight of the inspection process, coupled with his reporting of that process to Malibu, constituted either negligently or intentionally tortious conduct, and an individual is not protected "from being held personally liable for his own tortious conduct simply because he is an officer of a corporation."[34]

**Conclusion**

Therefore, for the reasons set forth above, the Court finds that personal jurisdiction exists over Third-Party Defendants Avicor and Tamm and denies their motion to dismiss.

It is so ORDERED.

SIGNED this 7th day of December, 2007.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[33] 2007 WL 2909565, 18 (5th Cir. 2007).

[34] *Id.*