UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU CONSULTING CORP.,  )<br>  )<br>    Plaintiff,  )<br>  )<br>V.  )<br>  )<br>FUNAIR CORPORATION, A/K/A  )<br>FUNAIR CORPORATION,  )<br>  )<br>    Defendant and Third-Party Plaintiff  )<br>  )<br>V.  )<br>  )<br>AVICOR AVIATION, INC. AND J. ALLAN  )<br>TAMM, INDIVIDUALLY  )<br>  )<br>    Third-Party Defendants.  ) | Civil Action No.  SA-06-CA-735-XR |

## ORDER

Defendant filed a Motion for Choice of Law Determination (Docket No. 220) asking the Court to apply Texas law to Plaintiff's tortious causes of action for fraudulent non-disclosure, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraudulent inducement of a contract. Plaintiff counters that California law should be applied in construing these claims. Having considered the briefings and relevant law, the Court DENIES Defendant's motion.

### Factual Analysis

The suit arises from a dispute concerning the purchase, sell, and maintenance of a 727 airplane that Plaintiff Malibu Consulting Corporation, based in California, purchased from Defendant and Third-Party Plaintiff Funair Corporation, based in Florida. Malibu alleges Funair prevented Aero Sky, a Texas-based corporation, from conducting a full and thorough pre-purchase inspection of the plane. Malibu specifically alleges Funair refused to permit certain plane panels to

be removed despite Aero Sky's insistence that without their removal, the inspection would be hampered. Malibu further pleads that Funair repeatedly and materially misrepresented the condition of the plane and failed to inform it of the plane's full operational and maintenance history.

After completing the purchase of the 727 aircraft, Malibu hired Aero Sky to perform maintenance and repairs, which based on the pre-purchase inspection reports, Malibu anticipated would cost approximately $1 million. To its dismay, the extent of corrosion and damage to the plane was considerably more than anticipated, substantially escalating the costs of the necessary repairs. As a result, Malibu avers claims against Funair for fraudulent misrepresentation, fraudulent concealment, fraudulent non-disclosure, negligent misrepresentation, fraudulent inducement of a contract, breach of express warranty, and breach of implied warranty of fitness for a particular purpose.

In response, Funair denies Malibu's claims and argues that to the extent it is found liable, some or all of the blame should be apportioned to Avicor Aviation, Inc., based in Oregon, or J. Allan Tamm, Avicor's director and a resident of the state of Washington. Malibu hired Avicor to assist in identifying a plane to purchase, arranging for a pre-purchase inspection, negotiating the airplane purchase agreement, and coordinating maintenance and repairs post-purchase. Mr. Tamm was Avicor's principal contact with Malibu during this process. Funair argues that Third-Party Defendants Avicor and Tamm intentionally, recklessly, or negligently misrepresented the condition of the aircraft to Malibu in an effort to induce Malibu to purchase it. In particular, Funair contends it was Mr. Tamm, not Funair, who issued the order restricting Aero Sky's ability to conduct a thorough pre-purchase inspection of the aircraft.

**Legal Analysis**

Defendant acknowledges that the Aircraft Purchase Agreement (APA) signed by it and Plaintiff contains a clause that reads the APA "shall be governed, interpreted, and construed in accordance with the laws of the State of California, without regard for its conflict of law provisions."[1] While Defendant admits this language applies to Plaintiff's contract claims (breach of express warranty and breach of the implied warranty of fitness for a particular purpose), it contends the clause does not control Plaintiff's tort claims. For those claims, Defendant maintains a proper choice of law analysis militates in favor of Texas law.

Plaintiff does not seem to dispute that the language in the APA is not dispositive as to its tort claims. Rather, applying Texas choice of law doctrine, it contends California law should be applied to these claims.

As a starting point, "a federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits."[2] Both the Texas Supreme Court and the Fifth Circuit have addressed similar choice of law clauses to the one contained in the APA. In those cases, the respective courts held that while the choice of law clauses at issue governed contractual disputes, they were too narrowly drawn to encompass tortious claims.[3]

Accordingly, both parties agree that in Texas, the "most significant relationship test," found in § 6 and § 145 of the Restatement (Second) of Conflict of Laws, applies to Plaintiff's tort

---

[1] Docket No. 220 at 1.

[2] Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 674 (5th Cir. 2003).

[3] *See* Stier v. Reading & Bates Corp., 992 S.W.2d 423 (Tex. 1999) and Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719 (5th Cir. 2003).

claims. § 6 lists the relevant factors for consideration in a choice of law analysis as:

    a) the needs of the interstate and international systems,

    b) the relevant policies of the forum,

    c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    d) the protection of justified expectations,

    e) the basic policies underlying the particular field of law,

    f) certainty, predictability and uniformity of result, and

    g) ease in the determination and application of the law to be applied.

§ 145 states that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." The "contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    a) the place where the injury occurred,

    b) the place where the conduct causing the injury occurred,

    c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

    d) the place where the relationship, if any, between the parties is centered."

According to the Fifth Circuit, the "application of the significant relationship test does not turn on the number of contacts, but more importantly on the qualitative nature of those contacts as affected by the policy factors enumerated in Section 6."[4]

---

[4] De Aguilar v. Boeing Co., 47 F.3d 1404, 1413 (5th Cir. 1995).

Before proceeding further, Plaintiff makes much of Defendant's contention that the APA's "as is, where is" clause applies to Plaintiff's tort claims. According to Plaintiff, Funair wants to have it both ways by invoking "some of the Agreement's clauses as a defense to Malibu's tort claims, and then escap[ing] the Agreement's choice of law provision."[5] Plaintiff, however, conflates two issues. Whether the "as is, where is" clause functions as a valid defense to Plaintiff's tort claims is a different question from whether Texas or California law governs the construction of those claims. The Court does not address in this Order how or under what circumstances the "as is, where is" clause applies. Rather, it simply looks to Texas choice of law doctrine to determine which state's laws should apply in evaluating Plaintiff's claims.

Returning to Texas' "most significant relationship test" outlined in § 6 and § 145 of the Restatement (Second), the parties offer competing facts for establishing that Texas or California law should apply to Plaintiff's tort claims.[6]

Plaintiff emphasizes those facts tying the claims to California. Malibu is a California corporation, and Geoffrey Palmer, the owner of Malibu, resides in California. He was located in California when various alleged misrepresentations, which he relied on to his detriment, were purportedly made to him about the aircraft's condition. One specific example is the pre-purchase demonstration flight, which originated in California and terminated in Nevada. While it is not clear exactly what was said and when, there is at least a colorable claim that various misrepresentations were made to Mr. Palmer during the course of this flight. Indeed, such alleged misrepresentations purportedly began before the aircraft ever left the ground, with Funair's

---

[5] Docket No. 240 at 3.

[6] No party asserts that Florida, Oregon, or Washington law should apply.

captain supposedly telling Mr. Palmer that the aircraft had been "maintained like a Fortune 100 operation," was as "clean as a whistle," and was "immaculately maintained."[7]

Defendant, on the other hand, argues that Texas is the state where it allegedly prevented Malibu's agent, Aero Sky, from properly inspecting the aircraft during the pre-purchase inspection. Texas is also where the aircraft transfer physically took place and where the severity of the supposedly unexpected corrosion damage was first identified.[8]

The parties dispute whether all of Plaintiff's claims sound in tort, or whether some of them - particularly the ones for breach of express warranty and breach of the implied warranty of fitness for a particular purpose - sound in contract. Defendant reads these two claims as being contract claims, and thus, governable by California law. Plaintiff, on the other hand, construes these claims as being in tort, and thus, governable by the same state's laws that control the construction of the rest of its tort claims.[9]

---

[7] Docket No. 240 at 5.

[8] The parties acknowledge that there are sufficient contacts with Texas to make venue proper in the state. Plaintiff denies, however, the import of this acknowledgment, arguing venue would also be proper in California, which it alleges has even stronger contacts with the parties and causes of action than does Texas.

[9] Plaintiff emphatically asserts it "*does not have any contract claims*." (Docket No. 240 at 3) (emphasis original). It argues that "the representations giving rise to Malibu's warranty claims are the *same* as the representations giving rise to Malibu's fraud and negligence claims." (*Id.*) (emphasis original). The apparent purpose of this argument is to show the illogicality of treating some tort claims as being controlled by California law while others are controlled by Texas law. The problem with this argument is that it addresses a problem of Plaintiff's own creation. The Texas Supreme Court and the Fifth Circuit have made clear that contract and tort claims may be governed by the laws of different states. Defendant admits that because of the APA choice of law provision, the warranty claims are controlled by California law to the extent they are contract claims. If, however, the warranty claims are not contract claims, but tort claims, then the APA choice of law provision would be inapplicable, meaning all the claims would be subject to either Texas or California law (thus resolving the split state problem complained of by Plaintiff).

Regardless of whether the warranty claims are best construed as contract or tort claims, the outcome is the same. If they are contract claims, the APA choice of law provision applies, making them subject to California law. If they are tort claims, Texas choice of law doctrine applies. Relating that doctrine to the facts of this case, the Court finds California law should apply.

Malibu is based in California, Mr. Palmer resides there, and the demonstration flight, including the alleged misrepresentations that supposedly occurred during or around it, originated from there. Furthermore, the parties clearly anticipated the possibility of being subject to California law in at least some capacity by adopting the provision of the APA that articulates it "shall be governed, interpreted, and construed in accordance with the laws of the State of California, without regard for its conflict of law provisions."[10]

While the pre-purchase inspection took place in Texas, neither the Plaintiff nor the Defendant is based in Texas, nor does Texas have the same interest in seeing its law applied as California does - a state in which one of its corporations alleges it was the victim of fraudulent behavior.

In sum, while tortious activity purportedly took place in both Texas and California, more factors militate in favor of applying California law, a state in which the Plaintiff is based and where, because of the APA, the parties had "justified expectations"[11] of being governed by the state's law. While admittedly a close call, the Court finds that the factors articulated in the Restatement (Second) favor this result.

---

[10] Docket No. 220 at 1.

[11] Restatement (Second) of Conflict of Laws § 6.

Therefore, for the reasons stated herein, all of Plaintiff's claims, whether construed as tort or contract claims, are governed by California law.

It is so ORDERED.

SIGNED this 28th day of February, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE