UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MALIBU CONSULTING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No.  SA-06-CA-735-XR |
| | ) | |
| FUNAIR CORPORATION, A/K/A | ) | |
| FUNAIR CORPORATION, | ) | |
| | ) | |
| Defendant and Third-Party Plaintiff | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| AVICOR AVIATION, INC. AND J. ALLAN | ) | |
| TAMM, INDIVIDUALLY | ) | |
| | ) | |
| Third-Party Defendants. | | |

## ORDER

Third-Party Defendants Avicor Aviation and J. Allan Tamm filed a motion for summary

judgment (Docket No. 212), asking the Court to find that Defendant and Third-Party Plaintiff Funair

has failed to create a genuine issue of material fact as to any of its claims against them. After

considering the facts, briefings, and pertinent case law, the Court DENIES the Third-Party

Defendants' motion.

## Factual Background

This suit arises from a dispute concerning the purchase, sell, and maintenance of a 727

airplane that Plaintiff Malibu Consulting Corporation, based in California, purchased from

Defendant and Third-Party Plaintiff Funair Corporation, based in Florida. Malibu alleges Funair

prevented Aero Sky, a Texas-based corporation, from conducting a full and thorough pre-purchase

inspection of the plane. Malibu specifically alleges Funair refused to permit certain plane panels to

be removed despite Aero Sky's insistence that without their removal, the inspection would be hampered. Malibu further pleads that Funair repeatedly and materially misrepresented the condition of the plane and failed to inform it of the plane's full operational and maintenance history.

After completing the purchase of the 727 aircraft, Malibu hired Aero Sky to perform maintenance and repairs, which based on the pre-purchase inspection reports, Malibu anticipated would cost approximately $1 million. The extent of corrosion and damage to the plane was considerably more than anticipated, substantially escalating the costs of the necessary repairs. As a result, Malibu avers claims against Funair for fraudulent misrepresentation, fraudulent concealment, fraudulent non-disclosure, negligent misrepresentation, fraudulent inducement of a contract, breach of express warranty, and breach of implied warranty of fitness for a particular purpose.

In response, Funair denies Malibu's claims and argues in the alternative that to the extent it is found liable, some or all of the blame should be apportioned to Avicor Aviation, Inc., based in Oregon, and/or J. Allan Tamm, Avicor's director and a resident of the state of Washington. Mr. Geoffrey Palmer, the sole owner of Malibu, hired Avicor to assist in identifying a plane to purchase, arranging for a pre-purchase inspection, negotiating the airplane purchase agreement, and coordinating maintenance and repairs post-purchase. Mr. Tamm was Avicor's principal contact with Mr. Palmer and Malibu during this process. Funair argues that Third-Party Defendants Avicor and Tamm intentionally, recklessly, or negligently misrepresented the condition of the aircraft to Mr. Palmer and Malibu in an effort to induce Mr. Palmer to purchase it. In particular, Funair contends it was Mr. Tamm, not Funair, who issued the order restricting Aero Sky's ability to conduct a thorough pre-purchase inspection of the aircraft.

**Legal Analysis**

Summary Judgment Standard

   The Federal Rules provide that summary judgment "should be rendered if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] The

party seeking summary judgment bears the initial burden of informing the court of the basis for

its motion and identifying those portions of "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact."[2] Once a proper motion has been

made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but

must present evidence setting forth "specific facts showing a genuine issue for trial."[3]

Third-Party Defendants Raise Two Grounds for Summary Judgment

   Third-Party Defendants raise two grounds in support of their motion for summary

judgment. First, they assert "there is no evidence of any material fact, which was known to the

Avicor Defendants and which those Defendants intentionally, knowingly, recklessly, or

negligently failed to disclose to Malibu, prior to the purchase of the Airplane."[4] Secondly, they

contend that they "share no common liability to Malibu with Funair because they owed no duties

to Malibu (contractual or otherwise) until after September 17, 2004, following Malibu's purchase

---

[1] FED. R. CIV. P. 56(c).

[2] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[3] FED. R. CIV. P. 56(e)(2).

[4] Docket No. 212 at 6.

of the Airplane."[5]

No Evidence

On the first ground, Funair relies on a note in Mr. Tamm's personal diary that says, "the

Aircraft did not pass the pre buy inspection."[6] Funair claims this note refutes Mr. Tamm's

deposition testimony that the aircraft did pass the inspection.[7]

Furthermore, Funair refers to Mr. Palmer's deposition testimony as evidence that Mr.

Tamm failed to inform Mr. Palmer that the aircraft failed the pre-purchase inspection.[8] Funair

contends that the allegedly discordant relationship between what Mr. Tamm personally confided

in his diary and what he told Mr. Palmer ostensibly raises a genuine issue of material fact as to

whether the Third-Party Defendants intentionally or negligently misled Mr. Palmer.

---

[5] *Id*. at 7.

[6] Docket No. 233, Exhibit 9.

[7] Docket No. 233 at 5. Third-Party Defendants argue that this note actually refers to "the
discussions between Tamm and Geoff Palmer about renegotiating N727LA's purchase price due to
the corrosion issues identified in the pre-buy inspection by Aero Sky, L.L.C. and Funair's inability
at the time to produce the 337 certificate for N727LA's auxiliary fuel tanks." (Docket No. 238 at 2).
    While Third-Party Defendants' explanation may be correct, it is the province of the jury to
consider the meaning of the facts in light of the competing interpretations proffered for them.

[8] Docket No. 233 at 5. Third-Party Defendants contend that an email exchange between Mr.
Palmer and Mr. Tamm establishes that Mr. Palmer knew about corrosion problems with the aircraft,
and therefore, was aware of the results of the pre-purchase inspection. Mr. Palmer's awareness of
the results, Third-Party Defendants argue, makes Mr. Tamm's private thoughts on the matter
irrelevant. (Docket No. 238 at 2).
    According to Mr. Palmer, however, he "was relying on Allan [Tamm] to interpret, you know,
whatever Aero Sky was saying," and that his understanding of the pre-purchase inspection was
merely that a "minor amount of corrosion" was discovered and that "nobody was too concerned
about it." (Docket No. 233, Exhibit 1, 71, 65). In fact, "everybody thought it [the aircraft] was a very
good buy . . . [and] Allan told me to buy it.." (*Id*. at 65). This and other statements from Mr. Palmer's
deposition raise a fact issue as to how much Mr. Tamm informed Mr. Palmer about the scope of the
pre-purchase inspection and the levels of corrosion found.

Second, Funair asserts that a genuine issue of material fact exists as to who supposedly ordered the Aero Sky pre-purchase inspection to be a limited one that did not penetrate the outer skin of the plane. Mr. Tamm contends Funair restricted the scope of the inspection.[9] However, Scott Wilson, an employee of Aero Sky, asserts that it was Mr. Tamm who, despite Aero Sky's advice to the contrary, insisted that the inspection be a limited or visual one.[10] And regardless of who set the limited parameters of the inspection, Mr. Palmer, through his deposition testimony, creates a factual issue as to whether Mr. Tamm informed him, prior to the purchase of the plane, of the limited scope of the inspection.[11] Given the higher risks associated with a limited, visual inspection over a thorough one that examined corrosion levels inside the panels, evidence suggesting either that the Third-Party Defendants restricted the inspection's scope or did not inform Mr. Palmer of the inspection's limited scope support Funair's position as to the Third-Party Defendants' asserted liability.[12]

---

[9] Docket No. 233, Exhibit 11 at 13.

[10] Docket No. 233 at 6.

[11] Docket No. 233, Exhibit 1 at 66-7, 70.

[12] Third-Party Defendants argue that the "contract between Aero Sky and G. H. Palmer Associates defines the scope of the pre-buy inspection and the parole evidence rule excludes any prior or contemporaneous statements to the contrary." (Docket No. 238 at 2-3).

This is not, however, a breach of contract case between Mr. Palmer and Aero Sky. Rather, the issue is whether a non-contracting third party - here Funair, Avicor, or Mr. Tamm - gave directions to Aero Sky that affected the scope and quality of the inspection provided.

The parol evidence rule does not apply to such a situation, which is neither limited to the parties to the contract, nor concerns enforcement of rights under the contract. (*See* Broder v. Epstein, 101 Cal. App. 2d 197, 198-9 (Cal. Ct. App. 1950) ("The rule that parol evidence cannot be received to contradict or vary a written contract does not apply in an action between a party to a contract and a third party.") (*See also* 11 Williston on Contracts § 33:9 (4th ed.) ("The parol evidence rule is frequently held to apply only to the contracting parties and their privies and not to third persons, often referred to as 'strangers to the contract,' unless they seek to enforce rights under the contract.").

For these reasons, Funair has presented sufficient evidence to establish a genuine issue of

material fact as to whether Mr. Tamm and Avicor bear at least some responsibility for the

injuries suffered by Malibu. The remaining question is whether the fact that these alleged injuries

were caused by the Third-Party Defendants' pre-purchase interactions with G. H. Palmer

Associates and not Malibu, the Plaintiff in this case, legally protects the Third-Party Defendants

from Funair's indemnification claims.

Mr. Palmer and Malibu

Mr. Palmer contracted with Avicor and Mr. Tamm on February 6, 2004 to advise him in

the purchase of an aircraft.[13] The agreement was signed by Mr. Palmer on behalf of either himself

or G. H. Palmer Associates, but not Malibu.[14] A contract between the Third-Party Defendants and

Malibu was not signed until September 17, 2004 - after the purchase of the aircraft.[15] Hence, the

Third-Party Defendants claim they owed no duty to Malibu related to the causes of action

asserted by Malibu against Funair, and now, by Funair against them.

In assessing this position, the Court begins by observing that California law applies to

Plaintiff's warranty and tort claims against Defendant Funair.[16] Because Defendant's

indemnification claims against Third-Party Defendants arise from Plaintiff's tort claims against

it, California law applies to those claims as well.

California provides for liability against an alleged tortfeasor in certain situations where

---

[13] Docket No. 212 at 2.

[14] Docket No. 233, Exhibit 2.

[15] Docket No. 233, Exhibit 6.

[16] *See* Docket No. 250.

the tortfeasor makes fraudulent representations to a party with the intent or expectation that a

third party will act in reliance upon such misrepresentations. In *Crystal Pier Amusement Co. v.

Cannan*,[17] the California Supreme Court considered a situation similar to the one presented here.

In *Crystal Pier*:

> several individuals, acting on behalf of a corporation, entered into negotiations
> with the defendants relating to the corporation's construction of a pier. The
> defendants represented to the individuals that certain material would be necessary
> for proper construction and agreed to furnish such materials. It was later
> discovered that the material provided did not comply with defendants'
> representations. In the meantime, the individuals had incorporated a new
> corporation, and the original entity had transferred title to the pier to this new
> corporation.[18]

Defendants argued that "as the representations were made before the Holding Company

was created, they were made not to it, but solely to the Amusement Company."[19] In response the

court reasoned that, "no representations were made to any 'corporation' as such."[20] Instead, they

were made "as always, to individuals . . . They were made to the corporation by virtue of the fact

that these individuals were agents of the corporation."[21] The court determined that "the

misstatements would not have more fully accomplished their fraudulent purpose if they had been

repeated to [the pertinent individuals] on the day the Holding Company was created, and on

---

[17] 219 Cal. 184 (Cal. 1933).

[18] Moore v. IMCO Recycling of CA, Inc., 2005 WL 5887179, 12 (C.D. Cal. 2005).

[19] *Crystal Pier*, 219 Cal. at 187.

[20] *Id*.

[21] *Id*.

every day thereafter that the work continued."[22]

Here, Mr. Palmer, to whom the alleged misrepresentations were made, is the sole owner of Malibu Consulting Corporation, the company that purchased the aircraft. Any misrepresentations made to him in this case were passed on to Malibu. Under *Crystal Pier*, the misstatement is treated as having been made to an individual.  In this case, the individual is Mr. Palmer, who relied on the alleged misrepresentations both in his capacity as head of G. H. Palmer Associates and as the sole owner of Malibu. Therefore, like in *Crystal Pier*, alleged misconduct directed toward an individual in his role as an officer or agent of a company is actionable by an affected third party corporation in which the same individual is also an officer or agent. Additionally, as in *Crystal Pier*, this Court does not believe the purported misstatements would "have more fully accomplished their fraudulent purpose" if they had been made to Mr. Palmer while acting in his capacity as principal of Malibu as opposed to as principal of G. H. Palmer Associates. Therefore, just as Malibu's claims against Funair can stand, Funair's claims against the Third-Party Defendants can also proceed.

---

[22] *Id*. at 188.

**Conclusion**

For the reasons stated herein, the Third-Party Defendants' motion for summary judgment (Docket No. 212) is DENIED.

It is so ORDERED.

SIGNED this 31st day of March, 2008.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE